## KIRBY LUMBER CO. v. STEWART.

(Court of Civil Appeals of Texas. Galveston. Nov. 4, 1913. Rehearing Denied Dec. 18, 1913.)

1. BOUNDARIES (§ 40*)—CALLS—AMBIGUITIES —QUESTION FOR JURY.

Where a latent ambiguity in a call for a boundary arises because the proof shows that a line run in accordance with the call will not reach the corner called for, the manner of ascertaining the true corner is for the jury.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–204; Dec. Dig. § 40.*]

2. BOUNDARIES (§ 37*) — EVIDENCE — SUFFICIENCY.

In an action for cutting and removing timber from a tract of land, evidence on the issue of boundaries held to show that the timber was cut and removed from a tract of plaintiff.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

3. EVIDENCE (§ 230*)—DECLARATIONS—ADMISSIBILITY.

The testimony of a grantor that before the execution of the deed to the grantee he, with the grantee's agent, went on the ground, and pointed out the boundary lines, is inadmissible against a subsequent purchaser of the grantee; the deed being duly recorded, and the subsequent purchaser relying on the description therein without knowledge of the facts.

[Ed. Note.—For other cases. see Evidence. Cent. Dig. §§ 835–851; Dec. Dig. § 230.*]

4. APPEAL AND ERROR (§ 1053*)—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVIDENCE.

The error in admitting improper evidence is not ground for reversal where the court specifically withdrew it from the jury, and directed the jury not to consider it for any purpose.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

Error to District Court, Tyler County; W. B. Powell, Judge.

Action by W. T. Stewart against the Kirby Lumber Company and others. There was a judgment for plaintiff against the defendant named and in favor of codefendants, and the defendant named brings error. Affirmed.

See, also, 141 S. W. 295.

Andrews, Ball & Streetman, of Houston, for plaintiff in error. Joe W. Thomas, of Woodville, for defendant in error.

McMEANS, J. W. T. Stewart brought this suit against the Kirby Lumber Company, J. R. Chapman, and D. G. Mann to recover damages in the sum of $2,473.20, for timber alleged to have been cut and removed from a certain 24½-acre tract of land in Tyler county, and for the alleged injury and destruction of other timber on said tract, and for alleged injury to the land itself through the hauling and dragging of logs thereover. The defendants each pleaded the general denial, and the Kirby Lumber Company in addition vouched in its remote warrantors, S. A. Hawthorne and M. J. Hawthorne, and prayed for recovery over against them in the event plaintiff recovered against it. Subsequently the Kirby Lumber Company dismissed its action against said remote warrantors, and thereafter a trial before a jury resulted in a verdict in favor of defendants Chapman and Mann, and against the Kirby Lumber Company in favor of the plaintiff, Stewart, for the sum of $275, from which the Kirby Lumber Company has appealed.

The 24½ acres of land in question is a part of a tract of 200 acres described in a deed from Wm. Neyland to R. C. Fulgham. On the western side of the 200-acre tract there are two lines running north and south and paralleling each other, and the 24½-acre tract is that lying between these two lines.

The 200-acre tract was conveyed by Fulgham to S. A. Hawthorne, and under Hawthorne both appellee and appellant claim in the following manner: (a) On June 21, 1902, Hawthorne and wife and the said Fulgham conveyed to W. W. Wilson the timber on 100 acres of the 200-acre tract, describing the 100 acres by metes and bounds, and Wilson's title passed to the Kirby Lumber Company. (b) On October 31, 1906, after the aforesaid conveyance had been duly recorded, Hawthorne and wife conveyed the 200 acres of land to W. B. Fondren and wife, and the parties last named afterwards conveyed the same to appellee, W. T. Stewart. The description in the timber deed from Hawthorne and wife and Fulgham to Wilson is as follows: "All of the timber standing, lying, and growing upon the following described tract or parcel of land lying and being situated in Tyler county, Texas, and a part of the Wm. Campbell league in said county and state, containing 100 acres more or less, and being a part of the same tract of land conveyed to me, the said S. A. Hawthorne, by R. F. Fulgham, on the 31st day of December, A. D. 1897, and described as follows: Beginning at the northeast corner of said tract; thence west to the northwest corner of said tract; thence south to where the present farm fence now stands; thence in an easterly course with said fence to Wolf creek; thence down said creek to where the east line of said tract crosses said creek; thence north to the place of beginning—and for further description reference is hereby made to land records of Tyler county in Book J, page 525." By the terms of the timber deed Wilson and his heirs were given the right of ingress and egress to and from all portions of said land and the adjoining lands for the purpose of cutting and removing the timber.

Appellee's contention is that the west line of the 100-acre tract described in the timber deed was the interior one of the two lines running north and south on the west side of the 200-acre tract, and not the exterior line.

[1, 2] By its first assignment of error plaintiff in error complains that the court erred in refusing to give its special charge No. 1, which was a peremptory instruction to find for the defendant. It contends in its proposition under this assignment that the charge should have been given for the reason that under the undisputed testimony the timber deed to the Kirby Lumber Company included within its bounds all of the 24½ acres described in plaintiff's petition, from which the evidence showed the defendant Kirby Lumber Company cut the timber.

The evidence shows that the Kirby Lumber Company, in cutting the timber on the 100 acres, at first took only that east of the interior western line, and it is evident, we think, that its agents acting for it in the premises believed that line to be the true west boundary line of the tract. Later, on surveying a tract of land lying west of the 100-acre tract, the exterior or most western northwest corner of the 100 acres was discovered, and the evidence indisputably shows, we think, that that corner is the true northwest corner of the tract. By the terms of the timber deed the timber was sold on 100 acres to be taken out of the northern part of a 200-acre tract of land which had for its beginning point the northeast corner of the tract. The line runs thence west to the northwest corner of the 200-acre tract, and under this call the Kirby Lumber Company had the right, under the facts of this case, to take the timber to the true northwest corner, although the seller and the agents of the Kirby Lumber Company at the time of the purchase believed that the interior line was the true west boundary line. The next two calls in the timber deed is "thence south to where the present farm fence now stands; thence in an easterly course with the fence to Wolf creek." The call for the western line is not at all ambiguous; but a latent ambiguity arose when attempt was made to reach the farm fence "as it now stands" (1902) by a line run south from the northwest corner, because the proof shows that a line so run would not reach the fence at all, but would pass west of the most western line of the fence a distance of some 12 or 15 feet. This ambiguity being disclosed, the matter of ascertaining the true southwestern corner of the 100 acres became a question of fact for the jury. The general direction in which Wolf creek runs is east and west, and the fence surrounding the farm in 1902 was on both sides of it; but on neither the north or the south sides of the creek did the fence extend far enough west to meet a line run due south from the northwest corner, so that a line run from that corner in order to strike the fence at a point either north or south of the creek would have to be deflected to the east. It is apparent from what we have said that the Kirby Lumber Company contends that the west line should be deflected only far enough to the east to reach the nearest point of the fence from a line run due south from the northwest corner, which would extend the west line to a point south of Wolf creek; while the plaintiff contends that the line should be deflected far enough east to reach the fence on the north side of the creek. Both recognize the rule that the call for the fence for the southwest corner would control over the call for a line to run due south. The jury found under appropriate instructions that the southwest corner of the 100 acres was at a point on the fence north of the creek, and, if there was evidence to justify this finding, their verdict should not be disturbed. From the testimony, and from a map illustrating the situation, it appears that a line run due south would not strike the fence at all, but to reach the fence must

be deflected slightly east. After reaching the fence in this way, Wolf creek would be reached by following the fence in an easterly course. The defendant contends that from the point thus reached Wolf creek would constitute the south boundary of the 100 acres. On the other hand, plaintiff contends that it is manifest that the corner on the fence called for in the field notes was at a point north of the creek, and that the west line should be deflected far enough east to reach the most westerly point on the fence north of Wolf creek. We think plaintiff's contention must be sustained. The map referred to shows that a line run from the northwest corner to the point on the fence south of the creek would, on account of the bends of the creek, cross the creek three times before reaching that point. From thence back to Wolf creek the fence runs in a northeasterly course, and after turning a bend in Wolf creek runs in a northwesterly direction to the creek. This takes in a small triangular piece of land in the southwest corner, south of the creek. The field notes do not call to cross the creek, and the only call for it is in the call to follow the field notes after the southwest corner is reached. If it was the intention of the parties to make the creek the west boundary of the 100 acres, it is reasonable that the call from the northwest corner would have been south to the creek, and it is not reasonable to presume in such case that they would have adopted a call for a line to cross the creek, not once, but three times. On the other hand, a line run from the northwest corner to the point which plaintiff contends is the southwest corner reached the fence north of the creek, and by running with the fence in an easterly course for the greater part of its length, and in a southerly course for a less distance, would reach Wolf creek, and the creek would not be crossed at all. The timber taken, and for which recovery was had, was that on the strip of land lying between the western line as contended for by defendant and the line contended for by plaintiff. We think that plaintiff's contention as to the location of the line is more in consonance with the evidence, reason, and justice of the case, and the first assignment presented by defendant cannot be sustained.

[3] The second assignment is as follows: "The court erred to the prejudice of this plaintiff in error in admitting over the objections of this plaintiff in error the testimony of S. A. Hawthorne to the effect that at the time he, with others, sold the 100 acres, more or less, to Wilson he went upon the ground with Wilson's agent, D. G. Mann, before the deed was made, and pointed out to said Mann the timber that was being sold, and showed Mann the lines bounding said timber, and showed him a certain interior west line, and showed him that the west line of the 100 acres, more or less, would strike the farm fence north of the creek, and showed him where said line would strike the fence, as will more fully appear from this plaintiff in error's bill of exceptions herein No. 2."

Under this assignment we have the following proposition: "The testimony objected to was incompetent and inadmissible as against plaintiff in error, Kirby Lumber Company, because clearly res inter alias acta; the Kirby Lumber Company not being a party to said original timber deed but only a subvendee thereunder, and there being no testimony that D. G. Mann, who was representing the vendee, Wilson, in said timber deed, was in any sense an agent or representative of the Kirby Lumber Company, which subsequently purchased from Wilson."

[4] The witness Hawthorne did testify as complained in the assignment, and we think it was error to allow the testimony over the objections made to it. Its admission, however, does not constitute reversible error, for the reason that the court withdrew the objectionable testimony from the jury by instructing them to disregard it. We quote that portion of the charge: "There is no evidence before you to show that the Kirby Lumber Company knew at the time it bought the timber on said 100 acres, more or less, that the witness Hawthorne and D. G. Mann went upon the ground, and Hawthorne showed the lines and corners of the 100 acres of land, more or less, to D. G. Mann, at the time he bought the timber for W. W. Wilson, and, the deed from Hawthorne and wife and Fulgham to said Wilson being duly recorded in the deed records of Tyler county, Texas, at the time said company bought the timber, it had the right to rely upon the description of the land as given in said deed, and cannot be bound by the acts and declarations of said Mann and Hawthorne made by them at the time the timber on said 100 acres of land, more or less, was bought for Wilson; therefore the testimony of the witnesses S. A. Hawthorne and D. G. Mann as to where the lines and corners of the 100 acres were is withdrawn from you, and will not be considered by you for any purpose in passing upon the location of said land."

The assignment must be overruled, as are also the third, fourth, and seventh, which present practically the same point but in different form. Neither party in their briefs, or otherwise, have called our attention to the quoted charge which eliminated the objection made to the admission of the testimony complained of. We hardly think this is fair to this court. See rule 31 (142 S. W. xiii).

What we have said in disposing of the first assignment of error sufficiently disposes of the sixth, which, with its several propositions thereunder, is overruled.

We have carefully examined the eighth and ninth assignments, and are of the opinion that neither points out reversible error, and each, with the propositions thereunder, is overruled.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.